## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SCOTT MARKMAN, individually and on behalf of all others similarly situated, <br><br> Plaintiff, <br><br> v. <br><br> SESEN BIO, INC., THOMAS R. CANNELL, and MONICA FORBES, <br><br> Defendants. | Case No. <br><br> **CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS** <br><br> <u>**JURY TRIAL DEMANDED**</u> |

Plaintiff Scott Markman ("Plaintiff"), individually and on behalf of all others similarly situated, by and through undersigned counsel, brings this class action pursuant to the Securities Exchange Act of 1934 (the "Exchange Act") alleging the following upon personal knowledge of facts pertaining to himself and on information and belief as to all other matters. Plaintiff's claims are brought on behalf of all persons who purchased or otherwise acquired the publicly traded securities of Sesen Bio, Inc. ("Sesen Bio" or the "Company") between December 21, 2020 and August 17, 2021, inclusive (the "Class Period"), and were damaged by the conduct asserted herein (the "Class").

## I.      <u>NATURE OF THE ACTION</u>

1.      Plaintiff asserts violations of Sections 10(b) and 20(a) of the Exchange Act and Rule 10b-5(b) promulgated thereunder. Defendants are: (i) Sesen Bio; (ii) Sesen Bio Chief Executive Officer ("CEO") Thomas R. Cannell; and (iii) Sesen Bio Chief Financial Officer ("CFO") Monica Forbes (the "Individual Defendants").

2.      Plaintiff's allegations are based upon Counsel's investigation, except as to the allegations specifically pertaining to him, which are based upon his personal knowledge. Counsel's investigation included, *inter alia*, a review of: (i) Sesen Bio's public filings with the SEC; (ii) press releases and other public statements made by Sesen Bio and the Individual Defendants; (iii) analyst and media reports; (iv) publicly available trading data regarding the Company; and (v) documents and information obtained from third-parties. Plaintiff believes that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

3.      Sesen Bio is a late-stage clinical company developing targeted fusion protein therapeutics for the treatment of patients with cancer.  The Company's lead drug or "program" as the Company refers to it, is Vicineum, also known as VB4-845.  Vicineum was developed to treat high-risk non-muscle invasive bladder cancer ("NMIBC").

4.      Sesen Bio has been developing Vicineum for more than a decade.  On December 21, 2020, Sesen Bio issued a press release announcing the December 18, 2020 submission of its completed Biologics License Application ("BLA") for Vicineum to the United States Food and Drug Administration ("FDA")..  Following that announcement, Sesen Bio painted an increasingly positive and misleading picture of its regulatory progress, fueling unrealistic enthusiasm in the market pertaining to the anticipated approval of the FDA for Vicineum.

5.      However, on August 13, 2021, the Company issued a press release announcing that the FDA declined to approve the Vicineum BLA in its current form and provided recommendations specific to additional clinical/statistical data and analyses in addition to chemistry, manufacturing and controls ("CMC") issues pertaining to a recent pre-approval inspection and product quality.  When the market learned the truth about the prospects of FDA

approval of Vicineum, the Company's stock price plummeted by 57%, from a closing price of $4.91 per share on August 12, 2021 to a closing price of $2.11 per share on August 13, 2021.

6.      Just a few days ahead of the FDA announcement, along with its second-quarter financials, Sesen said it had a 'productive' late-stage meeting on July 13, 2021 with the agency and that the FDA confirmed there was no Advisory Committee meeting planned, and that no post-marketing requirements, including a confirmatory trial, have been identified at that time. Also in the meeting, the company and the FDA discussed remaining questions related to manufacturing facility inspections, product quality information requests and additional information related to CMC, and a timeline to submit additional supporting information was agreed upon.

7.      In the months leading up to the FDA's denial of the Vicineum BLA, the Company, through its press releases, announcements, and SEC filings, fueled unrealistic optimism creating the impression that Vicineum's approval was more of a formality.  Enthusiasm for Vicineum was fueled largely by, among other representations, a July 13, 2021 meeting with the FDA that Sesen Bio described as productive, the hiring of additional executives to strengthen the Company's executive leadership team, and Sesen Bio's remarkable announcement that 34 of 35 sales representatives had already been hired in July 2021, a month before Vicineum's August 18, 2021 Prescription Drug User Fee Act ("PDUFA") date.

8.      Two events drove Sesen Bio's stock price down.  The first occurred on August 13, 2021, when the Company announced that the FDA had declined to approve the Vicineum BLA and requested additional clinical and statistical data and raised manufacturing issues stemming from a recent pre-approval inspection.  The second occurred on August 16, 2021, when Sesen Bio held an analyst call during which the Company finally admitted that it needed to put Vicineum

through a brand new confirmatory clinical trial, which would push a filing resubmission out to 2023.

9.    Then, on August 18, 2021, before the market opened, the health and medicine news site *STAT* published an article entitled "Sesen Bio trial of cancer drug marked by misconduct and worrisome side effects, documents show." Citing "hundreds of pages of internal documents" and "three people familiar with the matter," the article set forth in detail that the clinical trial for Vicineum was "marked by thousands of violations of study rules, damning investigator conduct, and worrying signs of toxicity the company did not publicly disclose."

10.    Throughout the Class Period, Defendants made materially false and/or misleading statements, and failed to disclose material adverse facts about the Company's business, operations, and prospects which should have been disclosed to make its statements not misleading. Specifically, Defendants failed to disclose to investors that:

1) Sesen's Bio's bladder cancer study showed that Vicineum had led to dangerous elevations in liver enzymes that are associated with organ failure and death;

2) Sesen Bio's bladder cancer study for Vicineum, which enrolled approximately 130 patients, had more than 2,000 violations of trial protocol, including 215 classified as "major;"

3) Independent monitors reported three (3) of Sesen Bio's clinical investigators to the FDA for particularly egregious violations and they were found guilty of "serious noncompliance," "continued noncompliance," and actions that "placed subjects at risk of harm" including "back-dating data;"

4) Sesen Bio submitted the tainted data in connection with the BLA for Vicineum despite being advised that "the data from these affected centers cannot be used in any data analysis;"

5) As a result of the foregoing issues, the Company's BLA for Vicineum was not likely to be approved;

6) As a result of the foregoing issues, there was a reasonable likelihood Sesen Bio would need to conduct additional clinical trials to support the efficacy and safety of Vicineum; and

7) As a result of the foregoing, Defendants' positive statements about the Company's business, operations, and prospects were materially misleading and/or lacked a reasonable basis.

11.      As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## II.    JURISDICTION AND VENUE

12.      The claims asserted herein arise under and pursuant to Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder (17 C.F.R. § 240.10b-5).

13.      This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 and Section 27 of the Exchange Act, 15 U.S.C. § 78aa, because this is a civil action arising under the laws of the United States.

14.      Venue is proper in this District pursuant to Section 27 of the Exchange Act, 15 U.S.C. § 78aa, and 28 U.S.C. § 1391.  Plaintiff Markman resides in this District and purchased his shares in this District.  Further, according to Sesen Bio's quarterly report dated August 2, 2021, there were 196,002,620 shares of the Company's common stock outstanding.  In addition, the Company's securities are traded on the Nasdaq Global Market ("NASDAQ") and, therefore, hundreds or more of Sensen Bio investors reside in this District.

15.      In connection with the acts, omissions, conduct and other wrongs alleged in this Complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce including but not limited to, the United States mail, interstate telephone communications and the facilities of the national securities exchange.

III.    **PARTIES**

**Plaintiff**

16.    Plaintiff Scott Markman purchased Sesen Bio's securities during the Class Period as set forth in the Certification attached hereto, and as incorporated by reference herein, and suffered damages as a result of the federal securities law violations and false and/or misleading statements and/or material omissions alleged herein.

**Defendants**

17.    Defendant Sesen Bio is incorporated under the laws of Delaware with its principal executive offices located in Cambridge, Massachusetts.  Sesen Bio's common stock trades on the NASDAQ under the symbol "SESN."

18.    Defendant Thomas R. Cannell ("Cannell") was the Chief Executive Officer ("CEO") of Sesen Bio at all relevant times.

19.    Defendant Monica Forbes ("Forbes") was the Chief Financial Officer ("CFO") of Sesen Bio at all relevant times.

20.    Defendants Cannell and Forbes, because of their positions with the Company, possessed the power and authority to control the contents of the Company's reports to the SEC, press releases and presentations to securities analysts, money and portfolio managers and institutional investors, *i.e.*, the market.  The Individual Defendants were provided with copies of the Company's reports and press releases alleged herein to be misleading prior to, or shortly after, their issuance and had the ability and opportunity to prevent their issuance or cause them to be corrected.  Because of their positions and access to material non- public information available to them, the Individual Defendants knew that the adverse facts specified herein had not been disclosed to, and were being concealed from, the public, and that the positive representations which

were being made were then materially false and/or misleading.  The Individual Defendants are liable for the false statements pleaded herein.

IV.    <u>FACTUAL ALLEGATIONS</u>

A.    <u>Sesen Bio's Material Misrepresentations and Omissions Regarding Vicineum's Regulatory Process Fuel Unrealistic Enthusiasm and Drive Up the Company's Stock Price</u>

21.    On November 9, 2020, Sesen Bio posted a corporate presentation on its website www.sesenbio.com, as disclosed by the Company in its Form 8-K filed with the SEC the same day, with a copy of the presentation.  In the presentation, Sesen Bio stated, in its "November 2020 Business Update":

1.    Differentiated MOA and clinical profile creates opportunity for best-in-class profile for Vicineum

2.    Clear regulatory path forward for potential approval in US in 2021 and Europe in 2022

3.    Significant global commercial opportunity; projected $1B - $3B peak revenue for Vicineum

On slide 10 of the presentation, Sesen Bio stated, "Positive progress in the US and Europe enables a clear regulatory path forward with the following anticipated milestones:"



22.    On December 7, 2020, Sesen Bio issued a press release announcing it had entered into a global commercial manufacturing and supply framework agreement on December 4, 2020 with Qilu Pharmaceutical Co., Ltd. ("Qilu") to be a contract manufacturer for the Company for the global commercial supply of Vicineum, "the Company's lead product candidate."  In the press release, Sesen Bio stated, "Technology transfer to Qilu anticipated to be completed in mid-2021"

and "Sesen Bio to receive $2M milestone payment upon completion of technology transfer".

Sesen Bio further stated, in relevant part:

> Sesen Bio (Nasdaq: SESN), a late-stage clinical company developing targeted fusion protein therapeutics for the treatment of patients with cancer, today announced that on Friday, December 4, 2020 the Company entered into a commercial manufacturing and supply framework agreement (the "CMO Agreement") with the Company's partner in China, Qilu Pharmaceutical Co., Ltd. ("Qilu").
>
> Under the CMO Agreement, Qilu will be part of the contract manufacturing network for global commercial supply of Vicineum. The Company's lead program, Vicinuem, is currently in the follow-up stage of a Phase 3 registration trial in the United States ("US") for the treatment of high-risk, BCG-unresponsive non-muscle invasive bladder cancer ("NMIBC"). The Company is on track to complete the BLA for Vicineum and submit it to the FDA later this month.
>
> …
>
> The Company believes that the technology transfer to Qilu for manufacturing of Vicinuem is on track to be completed in mid-2021. Upon completion of the technology transfer, Sesen Bio is entitled to receive a $2M milestone payment.
>
> In addition to Fujifilm and Baxter, the CMO partnership with Qilu expands the Company's network of work-class partners committed to providing reliable supply of Vicineum around the world.

23.     On December 21, 2020, Sesen Bio issued a press release announcing the December

18, 2020 submission of the Vicineum BLA to the FDA for the treatment of NMRBC.  In the press

release, Sesen stated, in relevant part:

> Within 60 days after receipt of the completed application, the FDA will issue a decision to the Company on the acceptance of the filing, and whether the BLA has received Priority Review (six-month target PDUFA date) under its existing Fast Track designation.
>
> The BLA is supported by the pivotal Phase 3 VISTA trial, which the Company believes demonstrates a strong benefit-risk profile. The BLA also includes positive chemistry, manufacturing and controls (CMC) data that the Company believes validates the analytical comparability between clinical and commercial supply.
>
> "There remains a significant unmet need for high-risk NMIBC, and we believe the differentiated clinical profile of Vicineum will provide a best-in-class option for

physicians and their patients," said Dr. Thomas Cannell, president and chief executive officer of Sesen Bio. "Our strong non-clinical and clinical data, in addition to our positive comparability data, give us confidence in the regulatory path forward. I would like to thank the entire Sesen Bio team and our regulatory and manufacturing partners for their tireless dedication in helping us to complete the BLA submission. We look forward to continuing our regulatory progress by submitting a Marketing Authorization Application in Europe, which we anticipate in early 2021."

24.     Notably, on February 1, 2021, Sesen Bio announced in a press release it had a

"**productive Application Orientation Meeting**" with the FDA regarding the Vicineum BLA,

stating, in relevant part:

> Sesen Bio (Nasdaq: SESN), a late-stage clinical company developing targeted fusion protein therapeutics for the treatment of patients with cancer, today reported that on January 29, 2021 the Company participated in a productive Application Orientation Meeting with the FDA regarding its Biologic License Application (BLA) for Vicineum, for the treatment of BCG-unresponsive non-muscle invasivebladder cancer (NMIBC).
>
> After the Company submitted its BLA to the FDA in December 2020, Sesen Bio was invited to participate in an Application Orientation Meeting, which is availablein certain Center for Drug Evaluation and Research (CDER) review divisions, at the review team's discretion, for priority applications where early action is expectedand/or desired. The objectives of an Application Orientation Meeting include familiarizing the FDA with application datasets, discussing scientific aspects including clinical risk-benefit, and establishing early communication betweenapplicants and the FDA.
>
> **"We are very pleased with the outcome of Friday's 90-minute meeting with the FDA,"** said Dr. Thomas Cannell, president and chief executive officer of Sesen Bio.**"We continue to believe Vicineum has a favorable risk-benefit profile which positions it to be best-in-class, and we are encouraged by the high level of time andengagement the FDA has demonstrated toward our review. We look forward to continuing to work with the FDA to expeditiously bring Vicineum to the market."** (Emphasis added).

25.     On February 16, 2021, Sesen Bio announced the FDA had accepted for filing the

Vicineum BLA for the treatment of NMIBC and granted the application for Priority Review.  With

Priority Review, the anticipated target PDUFA date for a decision on the BLA was August 18,

2021.  In addition, according to Sesen Bio, the FDA stated that it was not currently planning to

hold an advisory committee meeting to discuss the Vicineum BLA.In its press release

accompanying the announcement, the Company stated:

> Sesen Bio … announced today that the U.S. Food and Drug Administration (FDA) accepted for filing the Company's Biologics License Application (BLA) for Vicineum for the treatment of high-risk, BCG-unresponsive non-muscle invasive bladder cancer (NMIBC), and granted the application Priority Review. In addition, the FDA stated that it is not currently planning to hold an advisory committee meeting to discuss the BLA for Vicineum.

> …

> With Priority Review, the anticipated target Prescription Drug User Fee Act (PDUFA) date for a decision on the BLA is August 18, 2021.

> "**We have been meeting with the FDA regularly for the past two years on the application for Vicineum**," said Dr. Thomas Cannell, president and chief executive officer of Sesen Bio. "**We understand the FDA's position and guidance very clearly and have found the review process to be collaborative and engaging.** With these critical FDA decisions, we have reached an inflection point for the Company. **In addition to a clear regulatory path forward, we have continued to strengthen our balance sheet in preparation for the potential launch of a product we believe represents a significant advancement over available therapies**. We remain focusedon the patient and our mission to save and improve lives and expect to continue to make progress around the world in the coming months." (emphasis added).

26.    On March 15, 2021, Sesen Bio announced its financial results for the quarter and

year ended December 31, 2020.  In its press release, Sesen Bio stated, in relevant part:

> The Company's lead program, Vicineum, also known as VB4-845, is currently in the follow-up stage of a Phase 3 registration trial for the treatment of BCG-unresponsive non-muscle invasive bladder cancer (NMIBC).  In February 2021, the Food and Drug Administration (FDA) accepted for filing the Company's Biologics License Application (BLA) for Vicineum under Priority Review.

> We continue to make tremendous progress on our regulatory path with potential US approval later this year," said Dr. Thomas Cannell, president and chief executive officer of Sesen Bio. "Our talented and growing team is laser-focused on bringing a best-in-class treatment to the market that has the potential to improve patient outcomes while reducing healthcare costs. With a strong balance sheet and clear regulatory path forward in both the US and Europe, we are positioned to fully realize the potentially significant global opportunity for Vicineum. We expect 2021 to be a transformative year for Sesen Bio and the patients we serve."

US and European Regulatory Update

US:

- On February 12, 2021, Sesen Bio received notice from the FDA that theBLA for Vicineum for the treatment of BCG-unresponsive NMIBC was accepted for filing as of February 16th and granted Priority Review. The FDA set an accelerated 6-month target Prescription Drug User Fee Act(PDUFA) date of August 18, 2021 for a decision on the BLA. The FDA also stated that they are not currently planning to hold an advisory committee meeting to discuss the BLA for Vicineum.

...

Commercial Update

- In October 2020, Sesen Bio entered into an exclusive agreement with Cardinal Health for third-party logistics (3PL) and specialty pharmacy distribution services for Vicineum for the treatment of BCG-unresponsive NMIBC in the US. As part of the agreement, Cardinal Health will provide comprehensive end-to-end 3PL, order-to-cash management and specialty pharmaceutical distribution services to Sesen Bio in support of commercialization in the US. In addition to Fujifilm and Baxter, the Cardinal Health relationship completes the selection of major supply chain partners in support of the commercial distribution of Vicineum, if approved. The Company believes that the supply chain will be ready to support the potential commercial launch of Vicineum with product supply available in Urology clinics by the fourth quarter of 2021.

27.     The Company also posted a corporate presentation on its website www.sesenbio.com on March 15, 2021 which set forth the supposed progress on Vicineum from a regulatory and commercial launch standpoint.  Sesen Bio touted that its "long-term relationship with the FDA has allowed us to shape our nonclinical and clinical programs in alignment with the agency guidance" and provided the following chart:



28.   In the presentation, Sesen Bio also provided the following chart in emphasizing the

significance of its Vincencium BLA application and likelihood of approval by the FDA:



## Completion of Vicineum BLA Submission in December 2020

### Oncology Products Reviewed by FDA 2006 - 2015

| Phase | Probability of Approval |
|---|---|
| Products at end of Phase I | 5% |
| Products at end of Phase II | 8% |
| Products at end of Phase III | 33% |
| Products with BLA Submission | 82% |

As part of a comprehensive analysis done for the Biotechnology Innovation Organization (BIO), a total of 9,985 clinical and regulatory phase transitions (phase advancement or development suspension) were recorded and analyzed from 7,455 development programs, across 1,103 companies.

Sources: FDA applications for oncology products 2006 – 2015. Thomas D.W. et al. Clinical development success rates 2006-2015. 2016. Bio. BioMedTracker and Amplion.

41

29.   Also on March 15, 2021, Sesen Bio filed its annual report on Form 10-K for the

period ended December 31, 2020 (the "2020 10-K"), affirming the previously reported financial

results.

30.    The 2020 10-K further stated that Vicineum "***may*** cause undesirable side effects"

that could, among other things, prevent regulatory approval.  Specifically, the 2020 10-K stated:

> ***Vicineum for the treatment of BCG-unresponsive NMIBC may cause undesirable side effects, serious adverse events or have other properties that could delay or halt clinical trials, delay or prevent its regulatory approval, limit the commercial profile of its labeling, if approved, or result in significant negative consequences following any marketing approval.***
>
> Undesirable side effects or serious adverse events caused by Vicineum for the treatment of BCG-unresponsive NMIBC could cause us or regulatory authorities to interrupt, delay or halt respective clinical trials and could result in a restrictive label or the delay or denial of regulatory approval by the FDA or other comparable foreign regulatory authorities.
>
> There were no Grade 4 or Grade 5 serious adverse events that were considered by the clinical investigators to be related to Vicineum during the Phase 1 and Phase 2 clinical trials of Vicineum for the treatment of NMIBC BCG failures. There was one Grade 5 serious adverse event, or death, which was determined by the clinical investigator to be unrelated to Vicineum. The most common reported treatment-related adverse events were an abnormally frequent passage of small amounts of urine, blood in the urine and painful urination, the majority of which were considered to be mild or moderate in severity. No patients discontinued treatment due to a Vicineum-related adverse event during the Phase 1 and Phase 2 clinical trials.
>
> As of the May 29, 2019 data cutoff date, in patients across all cohorts (n=133) of our Phase 3 VISTA Trial of Vicineum for the treatment of BCG-unresponsive NMIBC, 88% experienced at least one adverse event, with 95% of adverse events being Grade 1 or 2. The most commonly reported treatment-related adverse events were dysuria (14%), hematuria (13%) and urinary tract infection (12%) - all of which are consistent with the profile of bladder cancer patients and the use of catheterization for treatment delivery. These adverse events were determined by the clinical investigators to be manageable and reversible, and only four patients (3%) discontinued treatment due to an adverse event. Serious adverse events, regardless of treatment attribution, were reported in 14% of patients. There were four treatment-related serious adverse events reported in three patients including acute kidney injury (Grade 3), pyrexia (Grade 2), cholestatic hepatitis (Grade 4) and renal failure (Grade 5). There were no age-related increases in adverse events observed in the VISTA Trial.
>
> In addition, side effects and serious adverse events or further safety or toxicity issues that we may experience in our clinical trials or in post-marketing experience could lead to the FDA's or other comparable foreign regulatory authority's imposition of a REMS or other post-marketing obligations, which could hinder us

from generating revenues or achieving profitability. ***Results of our clinical trials could reveal an unacceptably high severity and prevalence of side effects or serious adverse events. As a result, our clinical trials could be suspended or terminated and the FDA or comparable foreign regulatory authorities could order us to cease further development or deny approval of Vicineum for the treatment of BCG-unresponsive NMIBC.*** The related drug-side effects or serious adverse events in our clinical trials could affect clinical trial patient recruitment or the ability of enrolled patients to complete the clinical trial or result in potential product liability claims.

31.    The 2020 10-K also contained certifications pursuant to the Sarbanes-Oxley Act of 2002 ("SOX") signed by Defendants Cannell and Forbes attesting to, among other things, the disclosure of all material facts.

32.    On May 4, 2021, Sesen Bio issued a press release announcing (i) the appointment of Lisa LaMond as Vice President, Sales and Corporate Systems, and (ii) its engagement of leading contract sales organization (CSO), Syneos Health, for field sales support and execution in the United States for Vicineum.  The press release, entitled "**Sesen Bio Announces Commercial Launch Readiness Progress as the Company Approaches the Potential Approval and Launch of Vicineum**," (emphasis in original) reads:

> Sesen Bio … today announced the expansion of its leadership team with the appointment of experienced commercial industry leader, Lisa LaMond, as Vice President, Sales and Corporate Systems. The Company also announced its engagement of leading contract sales organization (CSO), Syneos Health, for field sales support and execution in the US for Vicineum.

> Lisa LaMond brings invaluable experience in commercial pharmaceuticals to her role as Vice President, Sales and Corporate Systems.

> …

> "We believe Syneos Health is the strongest CSO organization in the US and will help us quickly hire and manage the salesforce," [said] Dr. Cannell. **"I have a lot of confidence that with Lisa's leadership and the ability of Syneos to execute, together we can build a sales organization capable of delivering a world-class launch of Vicineum, if approved, in August this year."** (Emphasis added).

33. Sesen Bio announced its first quarter 2021 financial results anda commercial launch readiness update for Vicineum in a press release dated May 10, 2021, stating in relevant part:

**US:**

- In February 2021, Sesen Bio received notice from the FDA that the BLA for Vicineum was accepted for filing. Along with the acceptance, the Company was granted Priority Review with a target PDUFA date of August 18, 2021 for a decision on the BLA. The FDA also stated that an advisory committee meeting was not currently planned to discuss the BLA.

…

**Commercial Update**

- The Company continues to build its commercial organization with key leadership appointments and a partnership with a leading contract sales organization (CSO), Syneos Health, as it prepares for the anticipated commercial launch of Vicineum in the US in 3Q 2021. Sesen Bio has begun to hire key commercial roles and has entered into a partnership with Syneos Health who will provide speed and logisticalsupport in the hiring and deployment of the sales force. The sales force willinclude 35 sales representatives across four regions to target approximately2,000 high prescribers of BCG.

34. On the same day, May 10, 2021, Sesen Bio filed its quarterly report on Form 10-Q for the period ended March 31, 2021, affirming the previously reported financial results. The report incorporated by reference the risk factors included in the 2020 10-K and contained SOX certifications signed by Defendants Cannell and Forbes attesting to, among other things, the disclosure of all material facts.

**B. Sesen Bio Strengthens its Executive Leadership Team and Beefs up Sales Force as the Company Approaches the PDUFA Date of August 18, 2021**

35. On July 14, 2021, Sesen Bio issued a press release announcing that on July 13, 2021 it participated in a **"productive Late-Cycle Meeting"** with the FDA regarding the Company's Vicineum BLA . In the press release, the Company stated:

Sesen Bio … today announced that on July 13, 2021, the Company participated in

a productive Late- Cycle Meeting with the U.S. Food and Drug Administration (FDA) regarding the Company's Biologics License Application (BLA) for Vicineum for the treatment of BCG-unresponsive non-muscle invasive bladder cancer (NMIBC) currently under Priority Review with a target Prescription Drug User Fee Act (PDUFA) dateof August 18, 2021.

The Late-Cycle Meeting is held late in the BLA review process between members of the FDA review team and the applicant to discuss the status of the review. The purpose of the meeting is to share information, discuss any substantive review items identified to date and to discuss the objectives for the remainder of the review. The meeting does not address the final regulatory decision for the application.

**"We are very pleased with the outcome of the Late-Cycle Meeting and continue to feel encouraged by the level of engagement from the FDA in our ongoing discussions regarding the BLA for Vicineum,"** said Dr. Thomas Cannell, presidentand chief executive officer of Sesen Bio. **"We understand the FDA's position on the remaining review items and anticipate a successful resolution of these matters prior to the target PDUFA date.** We remain focused on the patient and bringing a differentiated product to market that has the potential to improve patient outcomes while reducing overall healthcare costs."

Key Review Updates Include:

- The Company and the FDA discussed remaining questions related to manufacturing facilities inspection, product quality information requests and additional information related to chemistry, manufacturing and controls (CMC), and agreed upon a timeline for supporting information to be submitted.

- No Discipline Review letters have been issued to date.

- The FDA confirmed that there is no Advisory Committee meeting planned at this time.

- No issues related to risk management have been identified to date.

- No post-marketing requirements, including a confirmatory trial, have beenidentified as necessary at this time.

- The Company and the FDA discussed clinical trial and manufacturing post-marketing commitments required at this time.

The FDA's review of the BLA is ongoing and the Company believes the BLA remains on track for an anticipated regulatory decision by August 18,2021, the target PDUFA date.

36.    On July 26, 2021, Sesen Bio issued a press release announcing the Company's "commercial progress as the Company approaches potential FDA approval and the commercial launch of Vicineum[.]" In the Company's Form 8-K accompanying the press release, Sesen Bio stated "[t]he Company believes it remains on track for an FDA decision on its Biologics License Application for Vicineum by the target PDUFA date of August 18, 2021." In its press release, Sesen Bio stated the "[h]iring of the US sales force is 97% complete and sales training has commenced[.]" The Company further stated, in relevant part:

> "We are thrilled to have this experienced commercial team on board at Sesen Bio to build capabilities as we approach the potential commercial launch of Vicineum in the US market," said Patricia Drake, chief commercial officer of Sesen Bio. "They have made incredible progress across the core functions of sales, marketing and market access. We also believe our network of Urology and Uro-oncology KOL speakers will play an integral role in allowing us to educate their peers about Vicineum, which we believe will be a new tool in their practices to serve a large unmet medical need in NMIBC."

> The Company has completed the hiring of ~25 talented internal employees to support the Company cross-functionally, as well as the hiring of 34 of 35 sales representatives as part of the contract sales organization, which will be deployed across four customer-centric regions and will target approximately 2,000 high-prescribers of BCG to drive awareness, trial and adoption of Vicineum for the treatment of BCG-unresponsive NMIBC. If approved, promotional efforts will begin immediately, and the Company expects Vicineum product to be commercially available to physicians and patients in the fourth quarter of 2021.

> In addition to building its sales force, as part of Sesen Bio's national speaker programs, the Company has identified and commenced training of 14 KOL speakers to engage physicians and educate them on Vicineum for the treatment of BCG-unresponsive NMIBC.

> Upon product availability, the Company will utilize a two-pronged market access strategy to ensure maximum coverage for Vicineum. …

37.    On August 2, 2021, Sesen Bio announced the appointment of Amy Ponpipom as Vice President, Assistant General Counsel and further stated that the Company "believes it remains

on track for an FDA decision on its Biologics License Application for Vicineum by the target

PDUFA date of August 18, 2021."  In the press release, the Company stated:

> "I am delighted to have Amy join the team here at Sesen Bio," said Dr. Thomas Cannell, president and chief executive officer of Sesen Bio. "Her strong industry experience and deep expertise in commercialization activities will be invaluable as we continue to work toward our PDUFA date and the potential launch of Vicineum in the US. I am confident that Amy's knowledge and skills will enable us to execute a world-class launch in order to fulfill our mission to save and improve the lives of patients."

38.    On August 5, 2021, Sesen Bio announced it had entered into a licensing agreement

with Eczacibasi Pharmaceuticals Marketing (EIP) for the registration and commercialization of

Vicineum in Turkey.  Under the terms of the licensing agreement, Sesen Bio would receive an

upfront payment of $1.5 million, be eligible to receive additional regulatory and commercial

milestone payments and would also be entitled to receive a 30% royalty on net sales in Turkey.

EIP was granted an exclusive license to register and commercialize Vicineum for the treatment of

BCG-unresponsive NMIBC in Turkey, where bladder cancer is the sixth most commonly

diagnosed cancer and 11th most common cause of death.  The agreement represented the third

Outside of the US (OUS) partnership that Sesen Bio has entered to date.

39.    On August 9, 2021, Sesen Bio announced its financial results for the quarter ended

June 30, 2021 and issued a press release entitled "Sesen Bio Reports Second Quarter 2021

Financial Results and Significant Global Progress for Vicineum."  In the press release, Sesen Bio

further stated, in relevant part:

> "We are excited about the regulatory progress we are making across our global markets," said Dr. Thomas Cannell, president and chief executive officer of Sesen Bio. "We remain focused on executing a world-class launch in the US if Vicineum is approved, and we also continue to support our partners outside of the United States, as part of our commitment to deliver a therapy we believe can improve patient outcomes globally while reducing overall healthcare costs for patients."

> US and Outside of the US (OUS) Regulatory Update

US:

- On July 13, 2021, Sesen Bio participated in a **productive Late-Cycle Meeting with the FDA regarding the BLA for Vicineum** for the treatment of BCG-unresponsive NMIBC. **In the meeting, the FDA confirmed that there is no Advisory Committee meeting planned at this time, and that no post-marketing requirements, including a confirmatory trial, have been identified at this time.** Also in the meeting, the Company and the FDA discussed remaining questions related to manufacturing facility inspections, product quality information requests and additional information related to chemistry, manufacturing and controls (CMC), and a timeline to submit additional supporting information was agreed upon. The Company believes it remains on track for an FDA decision on its BLA for Vicineum by the target PDUFA date of August 18, 2021. (Emphasis added).

                                    …

Commercial Planning Update

- **Sesen Bio completed its commercial build phase in preparation for the anticipated launch of Vicineum**, if approved, in the US, and has advanced to the implementation phase that will commence promptly, if approved, and will focus on executing the Company's commercial strategy for Vicineum. The Company has completed the hiring of ~25 talented internal employees to support the Company cross-functionally, as well as the hiring of 35 sales representatives as part of the contract sales organization who will target approximately 2,000 high-prescribers of BCG to drive awareness, trial and adoption of Vicineum for the treatment of patients with BCG-unresponsive NMIBC.

  In addition to building its sales force, as part of the Sesen Bio national speaker programs, the Company has identified and commenced training of 14 key opinion leader (KOL) speakers to educate their peers on Vicineum for the treatment of BCG-unresponsive NMIBC, if approved. Upon product availability, the Company will utilize a two-pronged market access and reimbursement strategy to ensure maximum coverage for Vicineum.

  **Promotional efforts will begin immediately upon the anticipated approval of Vicineum in the US, and the Company expects Vicineum product to be available to physicians and patients in the fourth quarter of 2021.** (Emphasis added).

- Results of market research conducted by the Company show that when given the choice between the product profile of Vicineum, based on Phase III clinical trial data, and the product profile of Keytruda, physicians will

> choose Vicineum over 80% of the time. This data highlights urologists'
> preferences that the Company believes spans clinical, emotional and
> economic reasons to prescribe Vicineum. If approved by the FDA, the
> Company believes Vicineum could be a best-in-class treatment option for
> patients, and a critical step in Sesen Bio realizing its mission to save and
> improve the lives of patients with cancer. (internal footnote omitted)

40.    Sesen Bio also filed its quarterly report on Form 10-Q for the period ended June
30, 2021 on August 9, 2021, affirming the previously reported financial results.  The report
incorporated by reference the risk factors included in the 2020 10-K and contained SOX
certifications signed by Defendants Cannell and Forbes attesting to, among other things, the
disclosure of all material facts.

41.    On August 11, 2021, Sesen Bio issued a press release announcing the appointment
of John Knighton as Vice President and Chief Compliance Officer.  In a press release entitled
"Sesen Bio Strengthens Executive Leadership Team as the Company Approaches the Potential
Approval and Commercial Launch of Vicineum," the Company stated:

> Sesen Bio … today announced **the expansion of its executive leadership team in
> support of the Company's continued transformation into a commercial-stage
> company** with the hiring of John Knighton as Vice President and Chief Compliance
> Officer, effective August 16, 2021. The Company's Biologics License Application
> (BLA) for Vicineum for the treatment of BCG-unresponsive non-muscle invasive
> bladder cancer (NMIBC), the Company's lead program, is currently under Priority
> Review with the US Food and Drug Administration (FDA) with a target
> Prescription DrugUser Fee Act (PDUFA) date of August 18, 2021.
>
> "At Sesen Bio, **we believe a strong culture of compliance is a source of
> competitive advantage, because a thorough understanding of laws and
> regulatoryguidance allows us to fully explore innovative commercial models
> and strategies**," said Dr. Thomas Cannell, president and chief executive officer of
> Sesen Bio. "This enables us to do the right thing while maximizing launch uptake
> of Vicineum. As we near our PDUFA date, I am confident that John's extensive
> experience in establishing compliance programs and enabling the implementation
> of innovative commercial model elements will further position us to execute a
> world-class launch."

42.    The above statements identified in ¶¶ 21-41 were materially false and/or misleading and failed to disclose material adverse facts about the Company's business, operations, and prospects.   Specifically, Defendants failed to disclose to investors:

(1) Sesen's Bio's bladder cancer study showed that Vicineum had led to dangerous elevations in liver enzymes that are associated with organ failure and death;

(2) Sesen Bio's bladder cancer study for Vicineum, which enrolled approximately 130 patients, had more than 2,000 violations of trial protocol, including 215 classified as "major";

(3) Independent monitors reported three (3) of Sesen Bio's clinical investigators to the FDA for particularly egregious violations and they were found guilty of "serious noncompliance," "continued noncompliance," and actions that "placed subjects at risk of harm" including "back-dating data";

(4) Sesen Bio submitted the tainted data in connection with the BLA for Vicineum despite being advised that "the data from these affected centers cannot be used in any data analysis";

(5) Sesen Bio's clinical trials showed that Vicineum leaked out into the body, leading to side effects including liver failure and liver toxicity, and increasing the risks for fatal, drug-induced liver injury;

(6) As a result of the foregoing issues, the Company's BLA for Vicineum was not likely to be approved;

(7) As a result of the foregoing issues, there was a reasonable likelihood Sesen Bio would need to conduct additional clinical trials to support the efficacy and safety of Vicineum; and

(8) As a result of the foregoing, Defendants' positive statements about the Company's business, operations, and prospects were materially misleading and/or lacked a reasonable basis.

**C.  The Truth Emerges:  Sesen Bio Announces the FDA Declined to Approve Vicineum BLA**

43.    On August 13, 2021, Sesen Bio issued a press release announcing it had received a Complete Response Letter ("CRL") from the FDA stating the FDA declined to approve the BLA for Vicineum in its current form.  The FDA provided recommendations for additional trial data

and analyses in addition to CMO issues pertaining to a recent pre-approval inspection and product

quality.  In the press release, Sesen Bio stated as follows:

> The FDA has determined that it cannot approve the BLA for Vicineum in its present
> form and has provided recommendations specific to additional clinical/statistical
> data and analyses in addition to Chemistry, Manufacturing and Controls (CMC)
> issues pertaining to a recent pre-approval inspection and product quality.

> "We are deeply disappointed by this unexpected result, and it is an unfortunate day
> for patients suffering from BCG-unresponsive NMIBC," said Dr. Thomas Cannell,
> president, and chief executive officer of Sesen Bio. "We remain dedicated to our
> mission to save and improve the lives of patients by bringing new treatment options
> to patients, and we intend to work closely with the FDA to understand next steps."

> The Company plans to request a Type A meeting as soon as possible with the FDA
> to discuss the next steps that are needed before the application may be approved.

44.    After the announcement, the Company's stock price experienced a one-day drop on

of 57%, from a closing price of $4.91 per share on August 12, 2021 to a closing price of $2.11 per

share on August 13, 2021, on unusually heavy trading volume.

45.    On August 16, 2021, Sesen Bio held a conference call to discuss the CRL with

analysts and investors during which Defendant Cannell revealed for the first time that Sesen Bio

would need to complete a clinical trial "to provide the additional efficacy and safety data necessary

for the FDA to assess the benefit-risk profile, which is the basis for approval."  Defendant Cannell

indicated that the Company would request a Type A meeting with the FDA to discuss the study

design, including the primary endpoints and the sample size, to provide sufficient information to

assess the benefit-risk profile of Vicineum.  As a result, the Company anticipated it would not be

able to resubmit its BLA until 2023.  During the conference call, Defendant Cannell further stated:

> Obviously, this is a very surprising turn of events, given that no deficiencies,
> including any substantive or major deficiencies, in our clinical data were raised by
> the FDA at the Late-Cycle Meeting on July 13th. In addition, at the Late-Cycle
> Meeting, the FDA indicated that an additional clinical trial was not identified as
> necessary at such time, an Advisory Committee meeting (Adcom) was not required,
> and there were no discipline review letters. And last Monday, we reached

agreement with the FDA on the final wording of the USPI – or product label – for Vicineum.

In the February 2018 guidance, the FDA states that a single-arm clinical trial with complete response rate and duration of response as the primary endpoint can provide primary evidence of effectiveness to support a marketing application. However, in that guidance, the FDA makes it clear that an additional trial may be necessary.

So, in our Type A meeting, we need to confirm several things with the Agency. First, we need to confirm that the primary endpoints should be Complete Response and Duration of Response. We will confirm that to have sufficient sample size and statistical power, the trial will need to be 90-100 patients, as described in the FDA guidance. We will confirm that it needs be a 12-month trial, and we will confirm the study population. Once we get this feedback from the FDA, we will provide you with guidance on this topic as quickly and transparently as possible.

Next, I'd like to turn to the second topic for the Type A meeting with the FDA, which is CMC. As previously disclosed, at the Late-Cycle Meeting, the Company and the FDA discussed questions related to manufacturing facility inspections, product quality information requests, and additional information related to CMC.

In the CRL, the FDA raised other questions about drug substance and drug product manufacturing, cell bank, characterization, resin reuse, reference standards, methods, specifications, stability, and microbiology.

So, we also have a lot to discuss at the Type A meeting about the Agency's CMC concerns.

46.    During the conference call, Sesen Bio appeared to blame increased scrutiny at the FDA and the agency's lack of a permanent commissioner.  In response to a question about the FDA's more conservative approach to applications, Defendant Cannell stated, in part:

Your question, though, is at the macro-level. And I would say at the macro-level, there is an unprecedented level of scrutiny at the FDA – maybe the most scrutiny we have seen since the early 1960s. First of all, there was the approval of the Alzheimer's drug in June despite a very negative Advisory Committee (Adcom) vote. And at least three of the Adcom members stepped down. That triggered an independent review by the Office of Inspector General of the FDA, which is very unusual. There has been tremendously heavy, toxic media coverage. And still there is no permanent FDA commissioner and several senior positions are not filled, so there is a kind of leadership vacuum. Here the Agency is with all that going on, plus the unbelievable pressure of trying to work in a pandemic with an extreme focus on COVID vaccines and treatment.

They are working in a white-hot light. And it is easy to see why they might be, as you say, more conservative or risk averse. We saw an analysis recently – maybe, John, your team can confirm it – but from January to early June, only about 15% percent of the FDA's decisions resulted in a Complete Response Letter. But from early June until now, roughly 50% of FDA decisions have been complete response letters. When you are under pressure, the risk-averse or the safer strategy, will always be to punt the ball down the field and to ask for more data.

So we are requesting a Type A meeting. We worked on it all weekend to get it out as soon as we can. That meeting will be in the fourth quarter, as I mentioned. And I am hopeful that things have calmed down by then. I still think there are a lot of potential solutions. That is our overall assessment.

47.    Following the conference call, the Company's stock price dropped 42%, or $0.89, on August 16, 2021, closing at $1.22 per share on August 16, 2021, on unusually heavy trading volume.

48.    The statements referenced above in ¶¶ 21-41 were materially false and/or misleading and failed to disclose material adverse facts about the Company's business, operations, and prospects.  Specifically, Defendants failed to disclose to investors:

1)  Sesen's Bio's bladder cancer study showed that Vicineum had led to dangerous elevations in liver enzymes that are associated with organ failure and death;

2)  Sesen Bio's bladder cancer study for Vicineum, which enrolled approximately 130 patients, had more than 2,000 violations of trial protocol, including 215 classified as "major";

3)  Independent monitors reported three (3) of Sesen Bio's clinical investigators to the FDA for particularly egregious violations and they were found guilty of "serious noncompliance," "continued noncompliance," and actions that "placed subjects at risk of harm" including "back-dating data";

4)  Sesen Bio submitted the tainted data in connection with the BLA for Vicineum despite being advised that "the data from these affected centers cannot be used in any data analysis";

5)  Sesen Bio's clinical trials showed that Vicineum leaked out into the body, leading to side effects including liver failure and liver toxicity, and increasing the risks for fatal, drug-induced liver injury; and

6) As a result of the foregoing, Defendants' positive statements about the Company's business, operations, and prospects were materially misleading and/or lacked a reasonable basis

**D. Sesen Bio's Trial of Vicineum Marked by Misconduct and Worrisome Side Effects**

49.     On August 18, 2021, before the market opened, STAT published an article entitled "Sesen Bio trial of cancer drug marked by misconduct and worrisome side effects, documents show." Citing "hundreds of pages of internal documents" and "three people familiar with the matter," the article detailed that the clinical trial for Vicineum was "marked by thousands of violations of study rules, damning investigator conduct, and worrying signs of toxicity the company did not publicly disclose." The article summarized:

> Sesen Bio, a small biotech company that developed the bladder cancer drug, spent all of this year telling investors that its treatment was on its way to approval. After the FDA rejected it, CEO Thomas Cannell, fielding analyst questions on a Monday morning conference call, deemed it "a very surprising turn of events."

> But Sesen's ***internal documents — which include safety reports, raw data, and communications between employees — suggest a seismic difference between the company's public statements and the realities of the drug's development.*** They also lift the curtain on revelations that might have played a role in the decision of regulators at the FDA, which, consistent with its practice in the case of rejected drugs, did not comment on its decision.

> According to the documents, Sesen's drug, called Vicineum, has led to dangerous elevations in liver enzymes that are associated with organ failure and death, which the Cambridge, Mass., company did not mention in its filings with the Securities and Exchange Commission. ***The bladder cancer study, which enrolled about 130 patients, had more than 2,000 violations of trial protocol, including 215 classified as "major," according to company documents.*** The study's independent monitors reported three investigators to the FDA for particularly egregious violations, calling them issues of "serious noncompliance" that "placed subjects at risk of harm," according to the documents.

> …

> In a statement to STAT provided a day before the rejection, Sesen did not deny the protocol violations, the investigator misconduct, or the omission of a drug-related death in its 2018 presentation. The company said Vicineum was not associated with life-threatening elevations in liver enzymes, a claim that contradicts multiple internal documents.

"We are confident that we have fully disclosed all relevant data to the FDA," Sesen said. "We stand by the safety and efficacy data of Vicineum," the company said, and as to the accuracy of its public statements, "we stand by the integrity of our disclosures and affirm they are based on the best information we have at the time."

50.    The STAT article further stated that Vicineum had led to "worrisome side effects,"

including "a serious risk for fatal, drug-induced liver injury."

Because that toxin, produced by the bacterium Pseudomonas aeruginosa, can be deadly if it reaches the liver, Vicineum has to be administered directly to the site of the cancer.

But data from Sesen's clinical trials suggested Vicineum was leaking out into the body, leading to worrisome side effects, according to internal company documents. In clinical trials testing Vicineum against head and neck cancer, one patient died of liver failure, according to the documents, and another matched the criteria for a clinical rule of thumb called Hy's Law, meaning a patient is at serious risk for fatal, drug-induced liver injury. That risk is particularly serious in the eyes of the FDA, and it's the most common reason drugs are pulled from the market over safety, according to an agency guidance.

A similar pattern emerged in Sesen's Phase 3 bladder cancer study, called VISTA. One patient met the criteria for Hy's Law, suggesting Vicineum led to serious liver toxicity, according to the documents. Another patient was diagnosed with life-threatening, drug-induced liver failure, confirmed by biopsy, according to the documents.

In its statement, Sesen said the company "thoroughly reviewed" data from VISTA and "confirmed there were no cases of Hy's Law based on the clinical criteria as stipulated by FDA guidance." In the head and neck cancer study, "the data showed some elevated liver enzymes that have not been determined to be cases of Hy's Law," Sesen said. Both claims are contradicted by company documents, including a clinical report concluding one patient "met the criteria for Hy's Law" and internal communications about a second patient in which one employee wrote "I agree this is a Hy's Law case."

51.    The STAT article also revealed that the trials purportedly supporting the BLA were

"plagued by serious investigator misconduct that threatened the integrity of the data."

VISTA was also plagued by serious investigator misconduct that threatened the integrity of the data, according to documents. In 2017 and 2018, Copernicus, a firm Sesen hired to monitor its trial, found three doctors in the study were guilty of "serious noncompliance," "continued noncompliance," and actions that "placed subjects at risk of harm," according to reports sent to the FDA.

Separately, one investigator had his clinic closed in 2017 after his hospital's disciplinary committee concluded he had engaged in "disgraceful, dishonorable, or unprofessional" behavior. A second investigator was found to be back-dating data, according to internal Sesen documents, casting serious doubt on any information gathered from his clinic. In each case, the company was advised that "the data from these affected centers cannot be used in any data analysis" submitted to the FDA, according to the documents. Despite that, Sesen included results from both sites in its application for Vicineum's approval, according to the documents.

In its statement, Sesen did not deny any instances of investigator misconduct in VISTA and did not dispute that it submitted tainted data to the FDA. "We are confident that we have fully disclosed all relevant data to the FDA," the company said, adding that "great care was taken every step of the way to ensure patient safety."

52.      Following STAT's report, the Company's stock price dropped 13%, or $0.20, on

August 18, 2021, closing at $1.31 per share.

53.      On August 20, 2021, Sesen Bio withdrew its marketing authorization application

to the European Medicines Agency ("EMA") for Vysyneum.  In a Form 8-K filed on August 25,

2021, the Company stated:

Given that certain components in the EMA's review are interrelated with elements of the US Food and Drug Administration's ("FDA") decision to issue a complete response letter regarding the Company's Biologics License Application ("BLA") for Vicineum™ for the treatment of BCG-unresponsive NMIBC, the Company is pausing its plans to pursue regulatory approval of Vysyneum in Europe until there is more clarity from the FDA on the next steps in the United States.

Sesen Bio plans to request a Type A meeting as soon as possible with the FDA to discuss next steps for the potential regulatory path forward for Vicineum in the US, and the Company expects this meeting to occur in the fourth quarter of this year.

The Company believes additional information from the FDA will equip the Company to better synchronize the regulatory reviews of Vicineum in the US and Europe. Sesen Bio is committed to the highest standards of ethics and integrity and continues to believe in the safety and efficacy data of Vicineum. The Company intends to work closely with the FDA to understand next steps.

V.    **CLASS ACTION ALLEGATIONS**

54.    Plaintiff brings this matter as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of a Class of all persons and entities who purchased or otherwise acquired Sesen Bio securities between December 21, 2020, and August 17, 2021, inclusive. Excluded from the Class are Defendants, directors, and officers of Sesen Bio, as well as their families, affiliates, heirs, successors, or assigns, and any entity in which Defendants have or had a controlling interest.

55.    The members of the Class are so numerous that joinder of all members is impracticable.  The disposition of their claims in a class action will provide substantial benefits to the parties and the Court.  Throughout the Class Period, Sesen Bio's shares actively traded on the NASDAQ.  While the exact number of Class members is unknown to Plaintiff at this time and can only be ascertained through appropriate discovery, Plaintiff believes that there are at least hundreds or thousands of members in the proposed Class.  Millions of Sesen Bio shares were traded publicly during the Class Period on the NASDAQ.  Record owners and other members of the Class may be identified from records maintained by Sesen Bio or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

56.    There is a well-defined community of interest in the questions of law and fact involved in this case.  Questions of law and fact common to the members of the Class which predominate over questions which may affect individual Class members include:

(a) Whether the federal securities laws, including the Exchange Act, were violated by Defendants;

(b) Whether Defendants omitted and/or misrepresented material facts;

(c) Whether Defendants' statements omitted material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading;

(d) Whether Defendants knew or recklessly disregarded that their statements were false and misleading;

(e) Whether the price of Sesen Bio securities was artificially inflated during the Class Period; and

(f) The extent of damage sustained by Class members and the appropriate measure of damages.

57.     Plaintiff's claims are typical of those of the Class because Plaintiff and the Class sustained damages from Defendants' wrongful conduct alleged herein.

58.     Plaintiff will adequately protect the interests of the Class and have retained counsel who are experienced in class action securities litigation and possess the necessary financial resources to pursue this matter on behalf of the Class.  Plaintiff has no interests that conflict with those of the Class.

59.     A class action is superior to other available methods for the fair and efficient adjudication of this controversy.

## VI.    LOSS CAUSATION

60.     When Defendants' prior material misrepresentations, omissions and misconduct were revealed and became apparent to investors, the price of Sesen Bio securities declined precipitously − as the prior artificial inflation in the price of the Company's securities was eliminated.  As a result of their purchases of Sesen Bio securities during the Class Period, Plaintiff and the other members of the Class suffered economic losses, *i.e.*, damages under the federal securities laws.

61.     The economic loss suffered by Plaintiff and the other members of the Class was a direct result of Defendants' fraudulent scheme to artificially inflate the price of Sesen Bio's securities and the subsequent significant decline in the value of the Company's securities when Defendants' prior misstatements and other fraudulent conduct were revealed.  The timing and magnitude of Sesen Bio's securities price declines negate any inference that the losses suffered by Plaintiff and the other members of the Class were caused by changed market conditions, macroeconomic or industry factors, or even Company-specific facts unrelated to Defendants' fraudulent conduct.

62.     At all relevant times, the material misrepresentations and omissions alleged in this Complaint directly or proximately caused or were a substantial contributing cause of the damages sustained by Plaintiff and other members of the Class. As described herein, during the Class Period, Defendants made or caused to be made a series of materially false or misleading statements about Sesen Bio's business, prospects and operations.

63.     The material misstatements and omissions alleged herein, *supra*, had the cause and effect of creating in the market an unrealistically positive assessment of Sesen Bio and its business, prospects, and operations, thus causing the Company's securities to be overvalued and artificially inflated at all relevant times. Defendants' materially false and misleading statements during the Class Period caused Plaintiff and other members of the Class to purchase the Company's securities at artificially inflated prices, thus causing the damages complained of herein.

## VII.    SCIENTER ALLEGATIONS

64.     As alleged herein, Defendants acted with scienter because Defendants knew the public documents and statements issued or disseminated in the name of the Company were materially false and/or misleading; knew such statements or documents would be issued or

disseminated to the investing public; and knowingly and substantially participated or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the federal securities laws. As set forth herein, the Individual Defendants, by virtue of their receipt of information reflecting the true facts regarding Sesen Bio, their control over, and/or receipt and/or modification of Sesen Bio's allegedly materially misleading misstatements and/or their associations with the Company that made them privy to confidential proprietary information concerning Sesen Bio, participated in the fraudulent scheme alleged herein.

## VIII.    APPLICABILITY OF PRESUMPTION OF RELIANCE

65.    As a result of the foregoing, the market for Sesen Bio's securities promptly digested current information regarding Sesen Bio from all publicly available sources and reflected such information in the prices of the stock. Under these circumstances, all purchasers of Sesen Bio's securities during the Class Period suffered similar injury through their purchase of Sesen Bio's securities at artificially inflated prices, and the basic presumption of reliance applies.

66.    Plaintiff is also entitled to a presumption of reliance under *Affiliated Ute Citizens v. United States*, 406 U.S. 128 (1972), because claims asserted herein against Defendants are predicated upon omissions of material fact where there was a duty to disclose.

67.    Had Plaintiff and other members of the Class known of the material adverse information not disclosed by defendants or been aware of the truth behind Defendants' material misstatements, they would not have purchased Sesen Bio common stock at artificially inflated prices.

68.    At all relevant times, there existed a substantial likelihood that the disclosure of the omitted facts would have been viewed by a reasonable investor as having significantly altered the total mix of information made available to Sesen Bio's shareholders.

69.    Plaintiff will rely upon the presumption of reliance established by the fraud-on-the-market doctrine in that, among other things:

(a)    Defendants made public misrepresentations or failed to disclose material facts during the Class Period;

(b)    The omissions and misrepresentations were material;

(c)    The Company's securities traded in efficient markets;

(d)    The misrepresentations alleged herein would tend to induce a reasonable investor to misjudge the value of the Company's securities; and

(e)    Plaintiff and other members of the Class purchased Sesen Bio's securities between the time Defendants misrepresented or failed to disclose material facts and the time the true facts were disclosed, without knowledge of the misrepresented or omitted facts; and

(f)    At all relevant times, the markets for Sesen Bio's securities were efficient for the following reasons, among others: (i) Sesen Bio filed periodic public reports with the SEC; (ii) its shares traded on the NASDAQ – a presumptively efficient national secondary exchange; and (iii) Sesen Bio regularly communicated with public investors via established market communication mechanisms, including through regular disseminations of press releases on the major news wire services and through other wide-ranging public disclosures, such as communications with the financial press, securities analysts and other similar reporting services.  Plaintiff and the Class relied on the price of Sesen Bio's securities, which reflected all the information in the market, including the misstatements and material omissions by Defendants.

## IX.    NO SAFE HARBOR

70.    The statutory safe harbor provided for forward-looking statements under certain circumstances does not apply to any of the false statements pleaded in this Complaint.  Many of

the specific statements pleaded herein were not identified as and were not "forward-looking statements" when made.  To the extent there were any forward-looking statements, there were no meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the purportedly forward-looking statements.

71.    Alternatively, to the extent that the statutory safe harbor does apply to any forward-looking statements pleaded herein, the Individual Defendants are liable for those false forward-looking statements because at the time each of those forward-looking statements was made, the particular speaker knew that the particular forward-looking statement was false, and/or the forward-looking statement was authorized and/or approved by an executive officer of Sesen Bio who knew that those statements were false when made.

## FIRST CLAIM

**Violation of Section 10(b) of the Exchange Act
and Rule 10b-5 Promulgated Thereunder
(Against All Defendants)**

72.    Plaintiff, individually and on behalf of the Class, repeats and re-alleges the allegations contained in paragraphs 1 through 71 as though fully set forth herein.

73.    During the Class Period, Defendants disseminated or approved the false statements and omissions specified above, which they knew or deliberately disregarded were misleading in that they contained misrepresentations and failed to disclose material facts necessary to make the statements made, in light of the circumstances under which they were made, not misleading.

74.    Defendants violated Section 10(b) of the Exchange Act and Rule 10b-5 in that they: (i) employed devices, schemes, and artifices to defraud; (ii) made untrue statements of material fact and/or omitted to state material facts necessary to make the statements not misleading; and

(iii) engaged in acts, practices, and a course of business which operated as a fraud and deceit upon those who purchased or otherwise acquired Sesen Bio securities during the Class Period.

75.    Plaintiff and the Class have suffered damages in that, in reliance on the integrity of the market, they paid artificially inflated prices for Sesen Bio's securities.  Plaintiff and the Class would not have purchased Sesen Bio's securities at the price paid, or at all, if they had been aware that the market prices had been artificially and falsely inflated by Defendants' misleading statements and material omissions.

76.    The Individual Defendants had actual knowledge of the misrepresentations and omissions of material fact set forth herein, or recklessly disregarded the true facts that were available to them.  Defendants' misconduct was engaged in knowingly or with reckless disregard for the truth, and for the purpose and effect of concealing Sesen Bio's true financial condition from the investing public and supporting the artificially inflated price of Sesen Bio's securities.

77.    Each of the Individual Defendants' primary liability and controlling person liability arises from the following facts: (i) the Individual Defendants were high-level executives and/or directors at the Company during the Class Period and members of the Company's management team or had control thereof; (ii) each of these defendants, by virtue of their responsibilities and activities as a senior officer and/or director of the Company, was privy to and participated in the creation, development and reporting of the Company's internal budgets, plans, projections and/or reports; (iii) each of these defendants enjoyed significant personal contact and familiarity with the other defendants and was advised of, and had access to, other members of the Company's management team, internal reports and other data and information about the Company's finances, operations, and sales at all relevant times; and (iv) each of these defendants was aware of the

Company's dissemination of information to the investing public which they knew and/or recklessly disregarded was materially false and misleading.

78.     Defendants had actual knowledge of the misrepresentations and/or omissions of material facts set forth herein, or acted with reckless disregard for the truth in that they failed to ascertain and to disclose such facts, even though such facts were available to them. Such defendants' material misrepresentations and/or omissions were done knowingly or recklessly and for the purpose and effect of concealing Sesen Bio's financial well-being and prospects from the investing public and supporting the artificially inflated price of its securities. As demonstrated by Defendants' overstatements and/or misstatements of the Company's business, operations, financial well-being, and prospects throughout the Class Period, Defendants, if they did not have actual knowledge of the misrepresentations and/or omissions alleged, were reckless in failing to obtain such knowledge by deliberately refraining from taking those steps necessary to discover whether those statements were false or misleading.

79.     As a result of the dissemination of the materially false and/or misleading information and/or failure to disclose material facts, as set forth above, the market price of Sesen Bio's securities was artificially inflated during the Class Period. In ignorance of the fact that market prices of the Company's securities were artificially inflated, and relying directly or indirectly on the false and misleading statements made by Defendants, or upon the integrity of the market in which the securities trades, and/or in the absence of material adverse information that was known to or recklessly disregarded by Defendants, but not disclosed in public statements by Defendants during the Class Period, Plaintiff and the other members of the Class acquired Sesen Bio's securities during the Class Period at artificially high prices and were damaged thereby.

80.    At the time of said misrepresentations and/or omissions, Plaintiff and other members of the Class were ignorant of their falsity and believed them to be true. Had Plaintiff and the other members of the Class and the marketplace known the truth regarding the problems that Sesen Bio was experiencing, which were not disclosed by Defendants, Plaintiff and other members of the Class would not have purchased or otherwise acquired their Sesen Bio securities, or, if they had acquired such securities during the Class Period, they would not have done so at the artificially inflated prices which they paid.

81.    By virtue of the foregoing, Defendants violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

82.    As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases and sales of the Company's securities during the Class Period.

## SECOND CLAIM

### Violation of Section 20(a) of the Exchange Act
### (Against the Individual Defendants)

83.    Plaintiff, individually and on behalf of the Class, repeats and re-alleges the allegations contained in paragraphs 1 through 71 as though fully set forth herein.

84.    The Individual Defendants acted as controlling persons of Sesen Bio within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their high-level positions at the Company and their ownership and contractual rights, the Individual Defendants had the power and authority to cause or prevent Sesen Bio from engaging in the wrongful conduct complained of herein.  The Individual Defendants were provided with or had unlimited access to the fraudulent SEC filings and other reports alleged by Plaintiff to be misleading both prior to and

immediately after their publication, and they had the ability to prevent the issuance of these materials or cause them to be corrected so as not to be misleading.

85.    In particular, Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company and, therefore, had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same.

86.    By reason of such conduct, Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for relief and judgment, as follows:

1.    Determining that this action is a proper class action pursuant to Rule 23(a) and (b)(3) of the Federal Rules of Civil Procedure on behalf of the Class as defined herein, and a certification of Plaintiff as class representative pursuant to Rule 23 of the Federal Rules of Civil Procedure and appointment of Plaintiff's counsel as Class Counsel;

2.    Awarding compensatory and punitive damages in favor of Plaintiff and the other Class members against all Defendants, jointly and severally, for all damages sustained as a result of Defendants' wrongdoing, in an amount proven at trial, including pre-judgment and post-judgment interest thereon;

3.    Awarding Plaintiff and other members of the Class their costs and expenses in this litigation, including reasonable attorneys' fees and experts' fees and other costs and disbursements; and

4.    Awarding Plaintiff and the other Class members such other relief as this Court may deem just and proper.

## JURY TRIAL DEMAND

Plaintiff demands a trial by jury in this action of all issues so triable.

Date:   October 7, 2021.                          Respectfully submitted,


*/s/ Lori G. Feldman*
Lori G. Feldman (LF-3478)
**GEORGE GESTEN MCDONALD PLLC**
102 Half Moon Bay Drive
Croton-on-Hudson, New York 10520
Phone: (917) 983-9321
Fax: (888) 421-4173
Email: LFeldman@4-Justice.com
E-Service: eService@4-Justice.com

David J. George*
Brittany L. Brown*
**GEORGE GESTEN MCDONALD, PLLC**
9897 Lake Worth Road, Suite #302 Lake Worth, FL 33467
Phone: (561) 232-6002
Fax: (888) 421-4173
Email: DGeorge@4-Justice.com
        BBrown@4-Justice.com
E-Service: eService@4-Justice.com

William B. Federman (WF9124)
**FEDERMAN & SHERWOOD**
10205 N. Pennsylvania Avenue
Oklahoma City, OK 73120
Telephone: (405) 235-1560
Facsimile: (405) 239-2112
Email: wbf@federmanlaw.com

*Attorneys for Plaintiff*

*\*Pro hac vice forthcoming*

**Plaintiffs Certification of Investment of**
**Sesen Bio [NASDAQ: SESN]**

I, _Scott E. Markman_ , hereby certify that the following information is true and correct to the best of my knowledge, information and belief:

1. I have reviewed the Complaint in this action and authorize the filing of this Certification as an exhibit to the Complaint, or any substantively similar complaint or amended complaint to be filed in the future. I retain the law office of Federman & Sherwood, and any other counsel with whom Federman & Sherwood deems appropriate to associate with, to pursue this action on my behalf on a contingency fee basis.

2. If chosen, I am willing to serve as a representative party on behalf of the class (the "Class"), either individually or as part of a group on behalf of the Class as defined in the Complaint, including providing testimony at deposition or trial (if necessary). I am also willing to participate on an executive committee of shareholders.

3. I have made the following transaction(s) during the Class Period in Sesen Bio [NASDAQ: SESN] securities (which are the subject of this action) as follows:

| # SHARES PURCHASED | DATE OF PURCHASE | PRICE PAID PER SHARE | CLASS OF STOCK (e.g. COMMON) | IF SOLD, # OF SHARES SOLD | DATE SOLD (if sold) | PER SHARE SELLING PRICE |
|---|---|---|---|---|---|---|
| 2,000 | 2-22-2021 | $2.97 | Common | | | |
| 1,000 | 5-5-2021 | $2.79 | Common | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |

(continue list on blank piece of paper, if necessary)

4. I did not purchase these securities at the direction of my attorney or in order to participate in a lawsuit under the Securities Act of 1933 or the Securities Exchange Act of 1934.

5. During the 3-year period preceding the date of this Certification, I have not sought to serve, nor have I served, as a representative to any party or on behalf of any class in any action arising under the Securities Act of 1933 or the Securities Exchange Act of 1934.

6. I will not accept any payment if chosen to serve as a representative party on behalf of the Class beyond my pro rata share of an award to the Class, or as otherwise ordered and approved by the Court, except for such reasonable costs and expenses directly relating to my service as a representative of the Class and as ordered and approved by the Court.

Signed under penalty of perjury, under the laws of the United States of America, this _20th_ day of _August_ , 2021.

_Scott E. Markman_
Investor Signature

_Scott E. Markman_
Print Name

_914-962-8322_
Home Telephone Number

_914-548-5256_
Cell Telephone Number

_253 Cordial Rd._
Home Address

_Yorktown Heights, N.Y. 10598_
City        State        Zip

_Semark3@msn.com_
E-Mail Address

_____
Secondary Email Address (if any)

**Return this completed form by e-mail or fax to:**
Priscilla Scoggins
FEDERMAN & SHERWOOD
10205 North Pennsylvania Avenue
Oklahoma City, OK 73120
(405) 235-1560/Fax (405) 239-2112
Email: pms@federmanlaw.com
Website: www.federmanlaw.com

**Plaintiffs Certification of Investment of**
**Sesen Bio [NASDAQ: SESN]**

I, _Scott E. MARKMAN_ , hereby certify that the following information is true and correct to the best of my knowledge, information and belief:

1. I have reviewed the Complaint in this action and authorize the filing of this Certification as an exhibit to the Complaint, or any substantively similar complaint or amended complaint to be filed in the future. I retain the law office of Federman & Sherwood, and any other counsel with whom Federman & Sherwood deems appropriate to associate with, to pursue this action on my behalf on a contingency fee basis.

2. If chosen, I am willing to serve as a representative party on behalf of the class (the "Class"), either individually or as part of a group on behalf of the Class as defined in the Complaint, including providing testimony at deposition or trial (if necessary). I am also willing to participate on an executive committee of shareholders.

3. I have made the following transaction(s) during the Class Period in Sesen Bio [NASDAQ: SESN] securities (which are the subject of this action) as follows:

| # SHARES PURCHASED | DATE OF PURCHASE | PRICE PAID PER SHARE | CLASS OF STOCK (e.g. COMMON) | IF SOLD, # OF SHARES SOLD | DATE SOLD (if sold) | PER SHARE SELLING PRICE |
|---|---|---|---|---|---|---|
| 2,000 | 2-22-2021 | $2.97 | Common | | | |
| 1,000 | 5-5-2021 | $2.79 | Common | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |

(continue list on blank piece of paper, if necessary)

4. I did not purchase these securities at the direction of my attorney or in order to participate in a lawsuit under the Securities Act of 1933 or the Securities Exchange Act of 1934.

5. During the 3-year period preceding the date of this Certification, I have not sought to serve, nor have I served, as a representative to any party or on behalf of any class in any action arising under the Securities Act of 1933 or the Securities Exchange Act of 1934.

6. I will not accept any payment if chosen to serve as a representative party on behalf of the Class beyond my pro rata share of an award to the Class, or as otherwise ordered and approved by the Court, except for such reasonable costs and expenses directly relating to my service as a representative of the Class and as ordered and approved by the Court.

Signed under penalty of perjury, under the laws of the United States of America, this _20th_ day of _August_ , 2021.

_____
Investor Signature

_Scott E. MARKMAN_
Print Name

_914- 962-8322_
Home Telephone Number

_914 - 548-5256_
Cell Telephone Number

_253 Cordial Rd._
Home Address

_Yorktown Heights, N.Y. 10598_
City          State          Zip

_Semark3@, MSN. Com_
E-Mail Address

_____
Secondary Email Address (if any)

**Return this completed form by e-mail or fax to:**
Priscilla Scoggins
FEDERMAN & SHERWOOD
10205 North Pennsylvania Avenue
Oklahoma City, OK 73120
(405) 235-1560/Fax (405) 239-2112
Email: pms@federmanlaw.com
Website: www.federmanlaw.com